Brandt, *ex dem.* Walton, *against* O. & D. Ogden.

*Baker's falls are the third falls, mentioned in the Kayaderosseras patent. The commissioners in the partition of that patent, in 1770, took the true north-west most head of the Kayaderosseras, and it is rightly laid down on their map. The term norterly in a grant, where there is no object mentioned to direct the inclination of the course towards the east or west, is construed to mean due north. To maintain a title on a claim of adverse possession, such possession must be adverse at its first commencement, and continue so, uninterruptedly, for 20 years.*

THIS was an action of *ejectment.* The cause was tried at the *Washington Circuit,* on the 12th *June,* 1805, before Mr. Justice *Spencer,* when a verdict was found for the defendants. The plaintiff claimed title to lot No. 10, in the 25th allotment of the *Kayaderosseras patent,* granted *November* 2, 1708 ; the only words of which, material in the present case, are, " *thence northerly to the north-west-* " *most head of a creek, entitled, Kayaderosseras, about* *fourteen miles more or less ; thence eight miles more norther-* *ly, thence easterly or north-easterly to the third falls on* *Albany River, about twenty miles more or less.*" This patent had been divided, in 1770, by certain commissioners, who had run the boundary lines, which the plaintiff contended were the true limits of the patent. The defendants claimed title to the premises in question, under the *Queensborough* patent, dated the 1st June 1762, and insisted that a certain creek, assumed by *William Cockburn,* the deputy surveyor general, as the *north-west-most head of* *the Kayaderosseras* was the true one, and that the premises in question, consequently fell within the bounds of the *Queensborough patent.*

On the trial of the cause, it was admitted, that the *third* *falls,* laid down by the commissioners in the partition of the first patent, are the same as designated in that patent as the third falls in the *Albany* (Hudson) river, and known by the name of *Baker's falls.**

On the motion made to set aside the verdict in this cause, as against evidence, as well as law, the following questions were raised for the consideration of the court.

1. Whether in the map of the partition, made by the

* This case had been tried at a former circuit, when a verdict was found for the plaintiff, which the defendants moved to set aside. The only question at that time was, as to the concluding point in the boundary lines of the *Kayaderosseras patent,* or, which were to be considered as the *third falls,* in *Hudson* river ? The plaintiffs insisted that they were those known by the name of *Baker's falls,* and the defendants, that they were the *Fort Miller falls.* The court being of opinion, from the facts presented in the case, then before them, that the latter were the third falls, awarded a new trial. See *Caines* vol. III. p. 6.

commissioners, about the year 1770, in running from the station on the *Schenectady*, or *Mohawk* river, they have assumed the real *north-west-most head* of the creek called *Kayaderosseras* ?

ALBANY.
Feb 1806,

Brandt
v.
O. & D. Ogden.

2. Whether, as the patent describes the *course* from that point to be *eight miles more northerly*, the commissioners were correct in running the line *a due north course* ?

3. Whether the defendants have made out an *adverse* possession of twenty years ?

*Harison* and *Henry*, for the plaintiff.

*Foot*, for the defendants.

As the arguments of the counsel would not be understood without a reference to the map, it is unnecessary to state them.

Spencer, J. delivered the opinion of the court. The defendants contended that a creek running into the *Kaya-derosseras*, and rising considerably further to the south-west, than the one to which the commissioners run the line, was, in regard to its position, the real *north-west-most* head of the *Kayaderosseras ;* but, in fact, the creek thus taken by the defendants, has always been known and called by the name of *Coesa*, and never by that of *Kayaderosse-ras*. This was proved by several witnesses, produced by the plaintiff at the trial, who had been acquainted with the country since its first settlement, and who were uncontra-dicted by any evidence adduced on the part of the defend-ants. It is true that after the *Coesa* disembogues into the *Kayaderosseras*, the name of the former is lost, but above the junction, the main stream retains the name of *Kayade-rosseras*. Without reference to the geographical situation of the two streams, it is incontrovertible that the commis-sioners did right in running to the head of the river, which was called *Kayaderosseras* to its source. It was said, that the distance from the *Mohawk*, to the head of the *Coesa*, agreed better with the distance required by the patent ; but it may be observed, that in all probability, no survey had been made prior to the grant of the patent of *Kayoderosse-ras*, and that the *object* being once ascertained, the distance can have no influence.

The term *northerly* in a grant, where there is no object to direct its inclination to the east or to the west, must be construed to mean north ; and were it not for the head of the *Kayaderosseras*, that course would have been thus run, but that object gave direction to the course. With regard, then, to the course, " thence eight miles more northerly," there being no object to control it, it must be a *due north line*. This construction\* is inforced by the recognition of this line by the government, which, though it would not divest a right acquired under a senior patent, yet serves to illustrate the sense of government on the point. The line run by the commissioners, must, therefore, be considered as the true one.

The fact of adverse possession in the defendants stands thus : about 44 years ago, one *Abraham Wing*, took possession in the town of *Queensborough*, and began some improvements on a creek near the possession of the defendants, which was continued until the war, when *Wing* quitted it ; two or three years after the termination of the war, one *Smeed* was seen in possession, and the witnesses understood, that the defendants took possession under *Smeed*, and had held the premises, 14 or 15 years. In order to bar the recovery of a plaintiff who has title, by a possession in the defendant, strict proof has always been required, not only that the first possession was taken under a claim hostile to the real owner, but that such hostility has existed on the part of the succeeding tenants ; it is also requisite that such possession should be marked by definite boundaries. In the present case, the extent of *Wing's* first possession is not shewn, nor does it appear that he entered with a claim of title. *Smeed's* possession is not connected with that of *Wing*, nor is the defendant's with that of *Smeed*. There is no continuity of possession. Under these circumstances, it cannot be pretended, that this is an adverse possession of twenty years. The court are unanimously of opinion, that there must be a new trial, on the usual terms.

New trial granted.

\* This was decided to be the true construction of the patent, in *January* term 1802, in the case of *Jackson*, *ex dem. Woodworth*, *v. Lindsey.*