## JANUARY TERM, 1847.

### (CONTINUED FROM II DOUGLASS.)

PRESENT:

HON. CHARLES W. WHIPPLE,
HON. WARNER WING,        } JUSTICES.
HON. GEORGE MILES,

———ooooo———

### MAY v. RUMNEY ET AL.

Under the Ordinance of 1787, a widow is entitled to dower, as at common law, in all the lands of which her husband was seized during coverture.

Actions for the recovery of dower are not within the statute of limitations of 5th Nov. 1829, Laws 1833, p. 408.

The right to dower is unlike any other right to land known to the law, and its peculiar nature is such as to exempt it from the operation of all general statutes of limitations, however broad and comprehensive, in which it is not named, or by unavoidable implication included.

CASE reserved from Wayne circuit court. Ejectment for dower. Plea not guilty. On the trial the jury found a special verdict, stating that James May and Margaret May, the plaintiff, were married on the 30th September, 1797 ; and that James May, on the 20th March, 1807, was seized in fee of the land in question, and that on the 17th June of the following year he conveyed the premises to Daniel Mc Niel, by a good and sufficient conveyance, in which the plaintiff did not join. That James May died in January, 1829, leaving the plain-

tiff his widow surviving him, and that her dower in the premises had not been made assigned or recovered. The defendants were in pos-session as tenants to John Garland, who, at the time the suit was commenced, was seized in fee of the estate conveyed by James May to Mc Niel ; and McNiel and those claiming under him had been in the peaceable and undisturbed possession of the premises from the 17th June, 1807, down to the commencement of the present action. The plaintiff moved for judgment on the special verdict, and the question was reserved by the circuit court for the opinion of this court.

*Davidson*, for plaintiff.

*Douglass & Walker*, for defendants.

*By the Court*, WING J.

The first question presented by the special verdict is, whether the plaintiff was, on the decease of her husband, entitled to dower in a lot of land of which her husband was seized during the coverture, but of which he was not seized at the time of his death.

It is admitted by the parties that this question is to be determined by the Ordinance of 1787, which contains the only express provision in relation to dower that has any bearing on this point.

The second section of the first article of the ordinance provides, " That the estates both of resident and non resident proprietors in the said territory dying intestate, shall descend [here follows the course of descents], saving in all cases to the widow of the intestate, *her third part of the real estate* for life, and one third part of the personal estate ; and this law relative to descents and dower shall remain in full force until altered by the legislature of the district."

It is insisted by defendants' counsel, that as the provision for dower is connected with the provision directing one third of the personal estate to be assigned to the widow, it is manifest the framers of the ordinance intended that they should both be placed upon the same footing. And as both were innovations upon the common law, the provision to be made for the widow, out of the personal estate, was intended as a compensation to the widow for her loss of dower in lands of which the husband had been seized during the coverture, but which he had alienated ; thus limiting her claim to dower, to lands of which the husband died seized.

May v. Rumney et al.

The previous part of the section is employed in regulating the descent of estates, and a different rule was established from any that had prevailed in any part of the country over which the ordinance was designed to be operative. Had the common law rule in relation to descents been adopted, this saving clause in relation to dower would not have been necessary ; but as if to avoid misconstruction, and to prevent the new rule from operating injuriously to the interests of the widow, a saving clause was introduced, recognizing some existing right. If the words used had been saving to the widow one third, instead of *her* one third part of the real estate for life, the defendant might have insisted with more reason that it was intended to provide a new rule of dower; but the right of the widow being mentioned in a saving clause, and the terms used being *her* third part, there is an obvious recognition of some ascertained existing right, protected and defined by some previous law, and which it was intended to affirm and continue in all its force and extent. This construction is strengthened by the fact, that in the other part of the sentence, relating to the personal estate, the word *her* is dropped. Then to what law in force in this country was reference made in this part of the ordinance? It appears to me most manifest that the reference could have been to no other than the common law, for the terms used are common law terms, having a well known meaning. The word dower used in the concluding part of the sentence is a common law term, and it is there used to designate the widow's third part of the real estate before mentioned.

It is matter of history, that for a long period previous to 1783, Great Britain held dominion over the district of country embracing much of what has been known and designated as the north-western territory. Previous to that period, and as far back as 1763, (when it was ceded by France to Great Britain as a conquered province) this portion of territory continued in the exclusive possession and occupancy of Great Britain, formed a part of her colonial possessions, was a part of the province of Upper Canada, and continued to be governed by her laws.

That the common law of England was in force in Upper Canada with such modifications as may have been made by the local legislature of the province, can hardly be doubted. It was the basis of their rights, and formed the rule of decision in civil and criminal cases. This being a matter of history, will be noticed by courts.

In 1783, the territory was ceded by Great Britain to the United States, but its actual possession was not relinquished to the United States until July, 1796, at which period we find the common law in force here, as it was generally in the United States. In 1787, the ordinance was adopted by the congress of the United States. It was designed for the whole north-western territory, including Ohio, Indiana and Illinois, as well as the country now embraced within the limits of this state. The instant the United States took possession, the ordinance became operative, and laid down the principles which constituted the groundwork of the future government. And the law of dower referred to and affirmed in this instrument continued, for many years after Ohio, Indiana and Illinois were erected into separate states, to be the only law on this subject in those states respectively.

It was never questioned, so far as I can learn, in either of these states, that the widow was by the ordinance entitled to dower in lands as at common law, until the case of Betts v. Wise, reported in 11th Ohio Rep. 219, in 1842, which arose under this clause of the ordinance, and in which it was insisted, for the defendant, that the widow's dower was limited to one third part of the real estate of which her husband died seized. Chief Justice Lane delivered the opinion of the court, and after stating the common law, remarks: " Such is the common law of dower, an institution existing wherever the common law obtains—a rule which each people has the right to change, but a conception which none could shake off without substituting some other provision in its stead. It was to a people under the dominion of this idea that the ordinance was addressed, and far from assuming to prescribe a different rule or confer a new right, it does no more than recognize an existing institution, and takes care that it receives no prejudice by the operation of the law of descents. We can regard it as no less than an authoritative acknowledgment of the estate in dower at the common law, to which law we must refer to learn the signification of the term, and the extent of the dowress' interest." The judge adds: " Since the organization of the territory, a wife was dowable of all lands within it of which her husband was seized at any time during the coverture." This opinion of Judge Lane appears to be quite conclusive upon this subject.

In addition to this judicial construction of the ordinance, we find

provisions in the Woodward and Cass codes of laws, adopted in the territory of Michigan soon after the organization of the territory, and in subsequent codes, requiring the wife to unite with the husband in the sale of real estate, and declaring the manner in which she should be barred of her dower, which shows the construction put upon the ordinance by our earliest law makers. See Woodward Code, 1805, pp. 53, 81; Laws 1820, pp. 30, 158; Laws 1827, pp. 65, 259; Laws 1833, pp. 264, 332. Thus we have a legislative and judicial construction of this clause in the ordinance which seems to establish its true meaning to be, (as at common law), that the wife is entitled to be endowed for her natural life of the third part of the lands whereof her husband was seized, either in law or in deed, at any time during the coverture. 4 Kent's Com. 35; Park on Dower 5.

So highly (says Judge Kent) was the law of dower esteemed, and so anxious were our forefathers to secure its undisputed establishment, that in its modern sense and enlarged extent, as applying to all lands of which the husband was seized during the coverture, it was incorporated amongst the provisions of Magna Charta, and it has continued in the English law to the present time; and with some modifications it has been everywhere adopted as part of the municipal jurisprudence of the United States. 4 Kent's Com. 36.

To the consummation of the title to dower three things are requisite, viz.; marriage, seizin of the husband, and his death. 4 Kent's Com. 36. The concurrence of the two former circumstances is properly the groundwork of the *title*, of which the death of the husband is the consummation, 4 Kent's Com. 36; Park on Dower 7. From the period when the husband dies, the incipient title which existed in the wife during the coverture becomes consummated and perfected, and her right of action to obtain the fruits of that title commences. Park on Dower, 247.

At common law it was competent for the heir to assign the widow's dower on the death of the husband, but if it was not assigned she had certain remedies. She had no right of entry until the dower was assigned to her, and she could not maintain a possessory action. The legal remedy to enforce an assignment of dower was by writ of dower, *unde nihil habet*, or writ of right of dower, brought against the tenant of the freehold, upon which, if she obtained judgment, dower was as-

signed. She might then proceed to recover possession by ejectment. Park on Dower, 283.

No demand of dower was necessary; the right of action was perfect without it; and the widow, by failing to make demand, lost her portion of the profits of the estate previous to the demand. Park on Dower, 288; 7 Cowen 288; 6 John. Rep. 295. Thus stood the rights and remedies of the widow, in reference to dower, at the common law.

By an act of the governor and judges of the territory of Michigan, passed February 26, 1821, (Laws 1833, p. 387, § 40) all the common law remedies for the recovery of dower were abolished. It is insisted by defendants that this statute gives the writ of right instead thereof. By an act of the legislative council, (Laws 1833, p. 332, §1) it was provided, " that if the heir or other person having the next immediate estate of inheritance, should not within one mouth set out to the widow of the deceased her dower, &c., then such widow might sue for and recover the same by writ of dower brought against the tenant." The remedy provided by this act is substantially the same as the common law remedy by writ of dower, which was in the nature of a real action. The form given in the statutes seems designed to embrace a declaration in substance, as at common law. The difference is, the declaration or complaint is contained in the writ, and the common law proceeding is in other respects somewhat simplified. This act, and the act of February, 1821, continued in force until repealed by the Revised Statutes of 1838.

Defendants' counsel insist that this action is barred by the statute of limitations of November 5, 1829, (Laws 1833, p. 408) the first section of which provides, " that no writ of right or other real action, no action of ejectment or other possessory action, of whatsoever name or nature, shall hereafter be sued, prosecuted or maintained for the recovery of any lands, tenements or hereditaments, if the cause of action has now accrued, unless the same be brought within ten years after the passing of this act, any law, usage, or custom to the contrary notwithstanding."

This statute seems to be broad enough to cover all possible remedies for the recovery of an interest in lands, and yet it does not in terms enumerate the action of dower provided by the acts to which I have referred. It becomes necessary, therefore, to determine whether the nature of the widow's right, and the remedy provided for the recovery

of dower, previous to the Revised Statutes of 1838, were such as to bring them within this statute.

From an examination of the English and American statutes of limitations, and the decisions upon them, it will be found that the rights of widows to dower have been highly favored. It has been fully established in England by a uniform course of decisions, and in most of the United States, that the wife's remedy by action for her dower is not within the ordinary statutes of limitations. Wells v. Beall, 2 Gill & John. 468; 3 Kent's Com. 3d edit. 70, in note; Swift's Digt. edit. 1822, p. 85; Barnard v. Edwards, 4 N. H. Rep. 109; Spencer v. Weston, 1 Dev. & Bat. 213; Guthrie v. Owen, 10 Yerg. Rep. 339; and yet if we examine some of the American statutes, it will be found they are as broad and comprehensive as the statutes under consideration. It will also be seen that the reasons why the action for dower is held not to be within the statutes, are, that the action for the recovery of dower is not expressly named—that no implication can be raised against such action on account of the favor with which courts have regarded the widow's rights, and because the peculiar nature of the right, and the general object of such statutes, is such as to exempt this action from their influence.

The English statute of 32.Hen. 8, c. 2, applies only to cases where the demandant counts only upon his own seizin or that of his ancestor. In Angell on Limitations, p. 33, it is stated that this statute extends not only to writs of right, but also to all other writs in the nature of a writ of right, in which the demandant must allege a seizin, and in which he seeks to recover a hereditament. But it does not extend to cases where the demandant does not count upon the *seizin of himself or his ancestor*, as in the writ of right of dower. In Bro. reading on this statute, it is said a woman brought a writ of dower of the seizin of her husband sixty years past. The action lyeth because that is not of her ancestor or predecessor, neither is it an action possessorie, and it is not prohibited by the statute. Appendix to Angell on Limit. 55. In Park on Dower, pp. 311, 342, it is stated that no statute of limitations has prescribed any period for bringing a writ of dower.

Chancellor Kent (4 Kent's Com. 61) lays down the general doctrine that the widow cannot enter for her dower until it is assigned to

her, nor can she alien it. It is a mere chose in action, and cannot be sold. She has no estate in the lands until assignment. The special verdict in this case finds the fact, "That said widow's dower in said premises has never been *made, assigned or recovered.*" That the widow *cannot enter* for her dower is affirmed in the following American authorities: 1 Yeates 425; 9 Mass. 13; 4 id. 388; 7 John. Rep. 247; 17 id. 167; 20 id. 411; 5 Munford 346; 16 Mass. 193; and that the statute of limitation does not run against dower until such assignment is made, is clear from the same authorities.

But it is insisted that our statute is more extensive than the English statute of Hen. 8, and 21 Jas. 1, c. 16, upon which the English decisions are made—that it is not limited to a right of entry or possession, but extends to the right of action. The following statutes are similar to our own, and are quite as broad and comprehensive. The statute of North Carolina provides "That no person nor their heirs, which shall hereafter have any *right or title to lands*, &c., shall enter or *make claim* but within seven years next after his or their *right or title* which descends *or accrues*, and in default thereof shall be utterly excluded from entry or claim thereafter." In that state it has been decided that a widow's right of dower is not subject to the statute of limitations until after it is assigned.

The Georgia statute of limitations enacts, " That all writs of formedon, &c. (enumerating those of 21 Jas. 1) or any other writ, suit or action whatsoever, at any time hereafter to be sued or brought by means of any *title* or *cause* hereafter accrued, &c., shall be sued and taken within seven years next after the passing of this act, or after the title or cause of action shall or may descend or accrue to the same, and that no person or persons that now hath or have, or which hereafter may have, any right or title of entry into any lands, &c., shall at any time hereafter make any entry but in seven years." This statute is surely as comprehensive as ours, and does not contemplate solely the case of a seizin which once existed, and from which the statute is to run. The supreme court of Georgia, in the case of Wakeman v. Roache, 1 Dudley's Rep. 123, which was an action for the recovery of dower, in which the statute was plead, say: "These words (referring to the first part of the section above quoted) would seem sufficiently comprehensive *to embrace every remedy*, and unless the case of dower

May *v.* Rumney *et al.*

is excepted because of its own distinguishing peculiarities, it must be included. Every title, as it accrues, carries with it and confers on him in whom it is invested, a right to reduce the same to possession by entry. In this respect the title of dower is peculiar, and forms an exception. It is, as Park observes, the *only probable case in which a complete title does not confer the right* to reduce the same to possession by entry. The title of the widow to be endowed is not of an undivided third of the entirety, but of a third part in severalty; until that third part is ascertained and assigned by *metes and bounds, she has no right of entry.* Upon what would she enter? An undivided third? She is not a tenant in common, and therefore this cannot be. Before the assignment of dower, *her right rests merely in action,* and until that right is reduced to certainty by the ascertainment of her third part in severalty, there is nothing upon which she can enter, or which she may reduce to possession. Upon this subject the authorities are conclusive." The court further remark: If, however, the statute should be held to operate as a bar to the enforcement of a *mere right,* unattended by a right of entry to be affected by it, there is nevertheless an insuperable difficulty in the court's mind to the operation of it in this case. There is a continuity of title from the husband to the wife. After assignment she is in by relation from the death of the husband. The intermediate entry and seizin of the heir between the death of the husband and seizin is not adverse, and does not disturb the continuity of title. Coke says, the law adjudgeth no *mesne seizin* between the husband and wife. Park on Dower, 156, 340. The assignment is considered as proceeding from and made by the husband, and this notwithstanding the estate is created by operation of law, without regard to the will of the husband, and notwithstanding the intermediate estate of the heir. It is obvious from these principles, that the *right of action* to have an assignment of dower does not result from any adverse right of possession in the heir or *feoffee,* and as a consequence, says Park, the mere possession of the heir or feoffee can never become a bar to the title of the wife. A possession under a claim or color of title, to be a good bar under the statute, must be founded on an adverse right of possession; and an adverse possession will be negatived when the parties claim under the same *title,* or when the possession of

one party is consistent with the *title* of the other party." Adams on Eject. 43. The court gave judgment for the demandant.

The Revised Statutes of Massachusetts, c. 119, §1, provide "That no person shall commence an action for the recovery of any lands, nor shall make any entry thereupon, unless within twenty years after the right to make such entry or bring such action first accrued, or within twenty years after he, or those from, by, or under whom he claims, shall have been seized or possessed of the premises, except as herein-after provided." In the case of Parker v. Obear, (7 Metcalf 24) a writ of dower was brought. The tenant derived his title to the premises from the husband of the demandant, through Joseph Parker, deceased, and he relied upon the above recited statute of limitations as a bar to the action. The court say, "the language of the statute is very broad. That a writ of dower is a writ for the recovery of lands, and taking the language of the statute without any qualification, it would seem to be a bar." And after referring to and commenting upon some of the authorities above cited, the court say, "We are clear that the statute of limitations was made with another purpose, and however broad the general words may be, they are not applicable to claims for dower."

In New York, in the case of Hogle v. Stewart (8 John. Rep. 104), which was an action for dower, the facts were shortly these. The writ was returnable Nov. Term, 1808. The demandant was married to John Hogle before the revolutionary war. He was seized of the demanded premises when he died in 1777, and Elizabeth his wife continued a widow. Hogle was duly attainted for adhering to the enemies of the state, in the late war. The commissioners of forfeiture sold the premises in which dower was demanded to one Henry, who conveyed to the tenant who held them ever after. One of the provisions of the act of attainder was, "that no person, &c., who now have, or shall or may hereafter have, any estate, right, title, claim or demand, to any lands, &c., supposed to have been forfeited, &c., and which have been heretofore granted or conveyed to any person, &c., shall after the expiration of five years from and after the passing of this act, &c., prosecute, sue, or maintain any action or suit at law, for the recovery thereof, *against the right and title so granted* by the people of this state, as above said." The court say, "No action shall be prosecuted or main-

May *v.* Rumney *et al.*

tained, after the expiration of five years, against the right and title granted by the commissioners; the right of dower is neither adverse to the right forfeited, nor is it against the right and title granted by the state, but is in concurrence with both. The seizin of the purchaser from the state is derived from the husband, and is a continuation of that seizin upon which the claim of dower is founded." Spencer dissented. Kent, Thompson, Yates and Van Ness concurred in the opinion given as that of the court. In the case cited from Massachusetts, the court say the reasons in this case of Hogle are applicable to the case before them.

I do not find any decisions in any of the states which give a different construction to their statutes of limitations, except a case in South Carolina, in 1 Const. Rep. 112. I have not seen the volume containing the case, but the court in the case of Parker *v.* Obear, in speaking of it say, The court held that " the statute of limitations of that state was a bar to the claim for dower, unless prosecuted within five years." But the decision was principally grounded on the express words of the statute, and the court were not unanimous in their opinion, and the English decisions there referred to relate to a case of alienation by fine, with proclamations. Stat. 4 Hen. 7, c. 24.

The stat. of South Carolina provides : " If any person to whom any right or title to lands, tenements or hereditaments shall descend or come, do not prosecute the same within five years after such right or title accrued, then he, she, or they shall be forever barred to recover the same." Brevoid Justice says, It is true dower is favored in law, and the act of limitations, being in restraint of the common law, is to be construed strictly, but it is equally true that the act of limitations, in this state, plainly and certainly limits the right of action to recover the possession of lands to five years after the right of the party accrued, descended or came.

It is well settled as a principle of law, that there must be an adverse possession before the statute of limitations can commence to run. 8 East 248; 2 Bos. & Pul. 542; 1 Dall. Rep. 67; 1 Caines' Rep. 394; 1 John. Rep. 156; 2 id. 230; 1 Wash. Rep. 37; 4 Cranch 367.

In Blanchard on Limitations, pp. 9, 13, it is stated that " these statutes of limitations never run against a man whilst he continues in the seizin, *therefore, to make the length of possession a bar under them,*

it must be a possession adverse to and inconsistent with the title of the true owner." " And though the owner be out of possession, the statute only begins to operate from the time of right to enter accruing." Lord Mansfield, also, in the case of Fairchild *v.* Stockton, asserts the same doctrine. The widow is not a joint tenant nor tenant in common with the heir, devisee or grantee.

Then is the title and possession of the defendant in this case adverse to that of the demandant ? If not, it is not perceived how the plaintiff's action can be defeated. Park, in his treatise on dower, p. 153 (335) says, " Although a title of dower is for most purposes nothing more than a right of action, and consequently transferable in no other mode than by release to the terretenant by way of extinguishment, yet it differs from all other mere rights of action in not being the result of any *adverse jus possessionis acquired by the heir or feoffee,* and as a consequence the possession of the heir or feoffee can never become a bar to the title of the wife."

It would seem, then, from an examination of the statutes, and authorities on this subject in England and many of the United States, that the right of dower is unlike any other right to land known to the law, and that its peculiar nature is such as to exempt it from the operation of all general statutes of limitations, however broad and comprehensive, in which this action is not named or by unavoidable implication included. Those statutes apply as a bar to those persons whose right of entry is lost by their own laches, or by the laches of those under whom they claim, but the widow has no right of entry. Independent of the favor with which courts are bound to regard the right of dower, it is such that the possession of the heir or purchaser cannot be adverse to the claim of the widow. The estate of the widow arises by operation of law, and is not created by grant. And as the lands, when held by the husband, are subject to the inchoate or incipient rights of the wife, if the husband deed them the purchaser takes them in the same way, subject to the same legal incidents, of which they cannot be divested except by the act or death of the wife. The purchaser enters into possession, not under a full and perfect title, but under a title subject to the dower of the wife, with which his title well consists, and to which it is in no wise opposed.

It was urged in the case of Hogle *v.* Stewart, that as a purchaser

May *v.* Rumney *et al.*

entered under a deed from the state, in which there was a warranty of title, the purchaser must be considered as having entered under a title adverse to all others. But it was said by the court, that " it was true the state was bound to defend the purchasers of forfeited estates against all claims whatsoever; the deeds given by the commissioners of forfeitures were for an absolute estate, but as it was known that the attainder did not impair the widow's right of dower, the state intended to indemnify the purchaser against such right whenever it should be made and enforced." So in this case. It will not be said the purchaser did not know he took the land subject to the wife's right of dower; and if there is a covenant of warranty in the deed, in case of a recovery of dower the estate of the deceased husband must respond for the value of the dower interest recovered by the widow of the purchaser. If it be said the estate may not be worth anything, it may be replied, the purchaser knowingly ran his hazard in this regard.

There are strong reasons why the widow should not be compelled, at the peril of a loss of her rights, to enforce them within the period limited by the statute in question; as, where the husband conveys without her joining, and receives the full value of the land, the wife, being otherwise provided for, would not disturb the grantee, unless misfortune befel her. But if limited to ten years, widows would uniformly enforce their rights within that period, in anticipation of a day of need.

I can see no reason why courts should not now, as formerly, look upon the claim of dower with great favor, and maintain the truth of what Lord Coke says was commonly said, that three things be favored in law,—*life, liberty and dower.*

*Certified accordingly.*