[By the court of common pleas of Franklin county, Pennsylvania, Rowe, P. J.]

---

SHUCK (UNITED STATES v.). See Case No. 16,285.

---

## Case No. 12,821.

### In re SHUEY.

[9 N. B. R. 526;[1] 6 Chi. Leg. News, 248.]

District Court, D. Minnesota. April, 1874.

BANKRUPTCY—PROPERTY IN HANDS OF SHERIFF—ASSIGNEE.

The United States district court has no authority to order property to be taken out of the hands of the sheriff who holds the same by virtue of an execution issued upon a judgment obtained in a state court, and the lien under the execution is prima facie valid. Therefore, until the writ is set aside on account of fraud, or for the reason that it is in violation of the bankrupt law, the assignee has no right to immediate possession of any of the property seized before the judgment is satisfied.

A creditor of the bankrupt obtained a judgment against him in the state district court before bankruptcy proceedings were commenced, and the sheriff has made a levy, by virtue of an execution, upon sufficient property to satisfy it. A temporary injunction was granted by the court, enjoining the sheriff from selling under the execution, upon the petition of an unsecured creditor, who asks that the sheriff be ordered to deliver the property in his possession to the assignee in bankruptcy when chosen. A motion is now made by [W. H. Shuey] the judgment creditor to dissolve the injunction, and upon a full argument and due consideration the following is the opinion of the court.

E. C. Palmer, for motion.
Geo. L. Otis and Harvey Officer, contra.

NELSON, District Judge. I have no authority to order the property to be taken out of the hands of the sheriff. The lien under the execution is prima facie valid. The writ was rightfully issued, and until set aside on account of fraud, or for the reason that it is in violation of the bankrupt law [of 1867 (14 Stat. 517)], the assignee in bankruptcy has no right to immediate possession of any of the property seized, before the judgment is satisfied. The creditor upon whose petition the injunction was granted, charges that the judgment, upon which the execution issued, was obtained through the procurement of the bankrupt, who desired to prefer the judgment creditor. If, when properly presented, such allegation should be sustained by the court, the lien would be declared null and void; until that occurs, however, I can not destroy it. The creditors, at their first meeting, this day, have authorized the assignee to contest the validity of the judgment lien, and for that purpose to file a bill in equity immediately. I shall therefore continue the injunction for the present, unless the judgment creditor will consent that, on the sale of the property, the proceeds may be deposited in this court by the sheriff, less the amount of his fees, to remain subject to the lien of the judgment creditor, and to be paid over to him if in the suit to be commenced by the assignee the court shall determine the claim or lien valid and legal. Should he consent to such an arrangement or disposition of the proceeds of the property seized, the clerk, on filing such a stipulation, will enter an order modifying the injunction so as to permit the sheriff to sell at the time advertised. If the litigation is protracted, an order will be entered that the fund be invested for the benefit of the successful party or parties.

---

## Case No. 12,822.

### SHUFFLETON v. NELSON.

[2 Sawy. 540.][1]

Circuit Court, D. Oregon. Feb. 10, 1874.

ADVERSE POSSESSION—BURDEN OF PROOF—COLOR OF TITLE—TACKING—OREGON DONATION ACT.

1. Twenty years continuous adverse possession of real property is a bar to an action by the

---

[1] [Reprinted from 9 N. B. R. 526, by permission.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

owner to recover the possession; but the burden of proof is upon the party alleging such a possession.

2. Whether an adverse possession is proven in a particular case is a question of fact for the jury, under the instructions of the court, as to what constitutes adverse possession.

3. The possession of the occupant of a lot in Coffin's addition to Portland was not adverse to the title of Coffin prior to the passage of the donation act, because the legal title of the latter did not accrue until that time.

4. The purchaser of a lot in the addition aforesaid from Coffin and Lownsdale, by a quit-claim deed of June 25, 1850, with a covenant to convey the legal title to said purchaser when the same should be acquired from the United States, did not hold the same in subordination to said Coffin's title under the donation act after the passage of the same, but the conditions of said sale being performed, so far as said purchaser was concerned, thereafter his possession might become adverse to said Coffin's, and in the absence of proof to the contrary, should be presumed to be so.

5. An adverse possession to be a bar to an action to recover the possession by the owner of the legal title must be continuous for twenty years; and several successive but unconnected disseizins or adverse possessions, though amounting in the aggregate to twenty years, cannot be tacked together to make such a continuous possession.

6. Where there are several successive adverse occupants of real property, the last one may tack the possession of his predecessors to his, so as to make a continuous adverse possession for twenty years, provided there is a privity of possession between such occupants; and in case of an actual adverse possession, such privity arises from a parol bargain and sale of the possession of the premises, followed by delivery thereof, as well as by a formal conveyance from one occupant to the other.

[Cited in Sherin v. Brackett, 36 Minn. 154, 30 N. W. 552; Vance v. Wood (Or.) 29 Pac. 75.]

7. Color of title or entry under a formal deed is only a necessary element of adverse possession, where such possession as to part of the premises claimed is merely constructive and not actual.

This action was commenced October 27, 1871, to recover the possession of lot one, in block one hundred and eighteen, in the city of Portland, and was tried before a jury, upon the defense that neither the plaintiff [H. A. Shuffleton], his ancestor, predecessor or grantor was seised or possessed of the premises in question, within twenty years before the commencement of this action. Code Or. 141. The plaintiff duly deraigned title from Stephen Coffin, the donee of a tract including the premises, under the donation act of September 27, 1850, by virtue of a settlement commenced before that date. The defendant [Robert Nelson] gave evidence tending to prove that Chapman purchased the premises of Coffin and Lownsdale on June 25, 1850; that in 1851 Chapman sold to Caruthers, who occupied until 1853, when the latter sold to Kellogg; that Kellogg fenced and occupied until 1862, when he sold to the defendant, who improved and occupied the same down to the commencement of the action. To prove these successive sales and transfers of the pos-

session of the lot, the defendant gave in evidence certain writings purporting to be the deeds of the several vendors to their vendees, which were not executed so as to entitle them to the force and effect of deeds. The defendant also gave oral evidence tending to prove the sale from Chapman to Caruthers, and from the latter to Kellogg; and also the sale from Kellogg to the defendant in 1862; and that at each of such alleged sales the purchaser obtained the possession of the lot from the prior occupant for a valuable consideration, with the intent to thereby acquire whatever right such occupant had in or to the premises, and so occupied it. Coffin, the donee, testified that he was in the possession of the donation claim of two hundred and forty acres, which includes this lot from August, 1850, to the date of the patent to him in 1861, but was not in the actual possession of this lot from the time of the sale to Chapman—June 25, 1850.

John W. Whalley, for plaintiff.

Walter W. Thayer, for defendant.

DEADY, District Judge (charging jury). Gentlemen of the Jury: It is admitted that the legal title to the premises in controversy is in the plaintiff. Stephen Coffin, the donee of the United States, was seized in fee of his donation claim, inclusive of this lot, under the donation act of September 27, 1850, from the date thereof—his settlement having been in fact commenced before that date—and the plaintiff shows a good paper title under him.

The defense is, that, notwithstanding the plaintiff and those under whom he claims have had the legal title since September 27, 1850, yet the plaintiff is barred of his right of entry, and therefore cannot maintain this action, because neither he nor they have been seized or possessed of the premises within the twenty years next before the commencement of this action—October 27, 1871. In other words, the defendant maintains that he and those in priority with him have been in the adverse possession of the premises for a period of twenty years prior to the commencement of this action.

The possession of the defendant and those in privity with him to constitute a bar to the plaintiff's right of entry must have been actual, exclusive, notorious and adverse, or hostile to the title of Coffin, or, in other words, it must have been continuously held during the period of twenty years with a manifest intent to claim the land occupied as against Coffin, and those claiming under him. 2 Washb. Real Prop. p. 489.

The burden of proof to show the possession to be adverse is upon the party who alleges it—the defendant. Whether or not the proof shows an adverse possession in this case is a question for you to determine, under the instructions of the court as to what constitutes such a possession. 2 Washb. Real Prop. p. 490.

The possession of Chapman prior to Sep-

tember 27, 1850, was not adverse to the plaintiff's title, because the legal title of his grantor, Coffin, did not accrue until that time. The statute of limitations did not commence to run against Coffin until the legal title had passed to him from the United States, by virtue of his settlement under the donation act. Doswell v. De La Lanza, 20 How. [61 U. S.] 32; Gibson v. Choteau, 13 Wall. [80 U. S.] 99. Neither did Chapman hold the possession of the lot in subordination to any right or title in Coffin prior or subsequent to the passage of the donation act, by reason of his entering under the deed to him from Coffin and Lownsdale, of June 25, 1850. Under that deed Chapman took the possession of the lot with a covenant upon the part of Coffin and Lownsdale to convey to him the legal title when they or either of them obtained it from the United States. The conditions of the sale were performed so far as Chapman was concerned, and from September 27, 1850, he was entitled in equity to a conveyance of the legal title from Coffin. Thereafter his possession might become adverse to that of Coffin's, and in the absence of any proof to the contrary, should be presumed to be so. Stark v. Starr [Case No. 13,307].

It is not seriously questioned, upon this view of the law, but that the defendant has been in the adverse possession of the premises since the date of his entry in 1862, and that Kellogg, Caruthers and Chapman were also in such possession during the several periods of their occupancy, since September 27, 1850; but the plaintiff insists that there is no privity of possession shown between the defendant and these parties, so as to make twenty years of continuous adverse possession in favor of the defendant.

Upon this point the law is, that the adverse possession of the defendant, to constitute a bar to the plaintiff's right, must be continuous. Several successive but unconnected disseizins or adverse possessions, though amounting in the aggregate to twenty years, cannot be tacked together to make a continuous possession for that period in favor of the last occupant. For instance, if A. enters upon the land of another and holds it adversely to him for ten years, and then abandons or disposes of his possession in some way, and thereupon B. enters upon the same premises and holds them adversely to the owner for another period of ten years, but without any privity of contract or estate with A., and as a stranger to him, he cannot tack A.'s possession to his, and thereby make a continuous adverse possession in himself for twenty years. In such case B. does not enter under A., or obtain his possession; and as soon as A. quits the possession, the true owner, in virtue of his legal title, is again instantly seized or possessed of the premises by operation of law, and thereby the continuity of the possession between the adverse claimants is broken, or rather is prevented.

To establish this privity of possession, it is admitted on all hands that the later occupant must enter under the prior one—must obtain his possession either by purchase or descent. Ang. Lim. § 413; 2 Washb. Real Prop. 489, 493, and cases there cited.

In this case the defendant claims that the proof shows that the possession has passed by bargain and sale and delivery, regularly from Coffin and Lownsdale to Chapman, from Chapman to Caruthers, from Caruthers to Kellogg, and from Kellogg to the defendant.

As a matter of law this proposition is denied by the plaintiff, because, as he maintains, this possession could only have passed from one of these parties to the other by the force and operation of duly executed deeds, valid upon their face, which, if the several grantors therein had had the legal title to the premises, would have been sufficient to pass such title to their grantees; it being admitted that no such deeds are shown.

In the books, it is often said, that to enable an occupant to tack the possession of a prior occupant to his, for the purpose of making out the statutory period of limitation, such occupants must have held under color of title, and there must be a privity in deed between them.

I think these expressions refer to and grow out of the doctrine of what is called constructive adverse possession; as where one enters under a deed, valid upon its face, for a tract of one hundred acres, but only actually occupies five acres of such tract, his claim of possession is referred for extent to the limits in his deed, and he is held to be constructively in the adverse possession of the whole tract. Simpson v. Downing, 23 Wend. 320; Humbert v. Trinity Church, 24 Wend. 611.

But here the premises in controversy are a town lot only fifty by one hundred feet in size. Under the circumstances there is no room for the doctrine of constructive possession. The occupants since the sale to Chapman have been in the actual possession of the whole lot, or no part of it.

Where the possession is actual it may commence in parol without deed or any writing, and I am of the opinion, both upon reason and authority, that it may be transferred or pass from one occupant to another by a parol bargain and sale, accompanied by delivery. All the law requires is continuity of possession, where it is actual. Brandt v. Ogden, 1 Johns. 158; Doe v. Campbell, 10 Johns. 477; 2 Hil. Real Prop. 172; Ang. Lim. § 413, note 2; Moore v. Moore, 8 Shep. [21 Me.] 350.

If, then, you are satisfied from the evidence that the defendant entered into possession of the premises under Kellogg, by virtue of a sale and delivery of the possession to him by Kellogg or his authorized agent, by deed, writing or parol, and that Kellogg entered under Caruthers and Caruthers under Chapman in like manner; and also that the defendant and said Kellogg, Caruthers and Chapman, or the defendant and said Kellogg and Caruth-

ers, have, taken together, held the actual possession of the premises, according to the situation of the property and the purpose for which the same was intended and could be conveniently used, adverse to Coffin's title, for a period of twenty years prior to October 27, 1871, your verdict should be for defendant; otherwise, for the plaintiff.

The jury found that the plaintiff was not entitled to the possession of the premises.