[Filed February 29, 1892.]

## W. L. VANCE ET AL. *v.* FRANK WOOD.

EJECTMENT — ADVERSE HOLDING — PRIVITY OF POSSESSION — EVIDENCE.— In actions of ejectment where the defense relied upon is adverse possession for the statutory period of limitations, made up of several hostile holdings, each less than the requisite time, it is incumbent on the defendant to establish privity of possession in the successive occupants under whom he claims; but such privity may rest in deed or in parol.

Benton county: M. L. PIPES, Judge.

Plaintiff appeals. Affirmed.

*J. R. Bryson*, and *Charles E. Wolverton*, for Appellants.

Where different persons enter upon land in succession, without title, the last possessor cannot tack the possession of his predecessors to his own, so as to make out continuity of possession, sufficient to bar the entry of the owner. The possession of one cannot be the possession of the other, because the moment the first occupant quits the possession, the legal possession is restored, and the entry of the next occupant constitutes him a new disseisor. There is no privity between them. (*Armstrong* v. *Resteau's Lessee*, 5 Md. 274; 59 Am. Dec. 115.)

To sustain separate successive disseisins as constituting a continuous possession, and confirming a title upon the last disseisor, there must have been a privity of estate between the several successive disseisors. To create such privity, there must have existed, as between the different disseisors in regard to the estate of which a title by disseisin is claimed, some such relation as that of ancestor and heir, grantor and grantee, or devisor and devisee. In such cases the title acquired by disseisin passes by descent, deed or devise. (*Sawyer* v. *Kendall*, 64 Mass. 244; *Melvin* v. *Proprietors, etc.* 46 Mass. 32; 38 Am. Dec. 384; *Marr* v. *Gilliam*, 1 Coldw. 504; *San Francisco* v. *Fulde*, 37 Cal. 352; 99 Am. Dec. 278.)

Where one occupant enters after another, it must be with the consent of his predecessor, indicated by contract or by an act of the law passing the possession from one to another, in order to make a continuous adverse possession. (*Chouquette* v. *Barada*, 23 Mo. 336; *Shaw* v. *Nicholay*, 30 Mo. 99; *Shuffleton* v. *Nelson*, 2 Saw. 545.)

When a party purchases realty and takes deed with given boundaries, but occupies outside the limits expressed in the deed; then deeds by the same description to a third party, who occupies outside such limits, the holding of the two grantees cannot be tacked so as to make their joint occupancy of the premises outside of description in deeds continuous. (*Graeven* v. *Devies*, 68 Wis. 317; *Erck* v. *Church*, 87 Tenn. 575; *Ruffin* v. *Overby*, 105 N. C. 78; *Jenkins* v. *Trager*, 40 Fed. Rep. 726.)

Where a disseisor conveys part of the land, and the grantee, under color of the deed, enters upon the whole, the possession of the first disseisor will not avail the grantee, in regard to the part not embraced by the deed. (*Ward* v. *Bartholemew*, 23 Mass. 408.)

Appellants claim that the court erred in allowing and permitting the Wood affidavit for continuance to be read in evidence at the trial over the objections of appellants. An affidavit for postponement of trial should state the

.evidence which the moving party expects to obtain. (Hill's Code, 284.)

*W. S. McFadden, John Kelsay,* and *J. J. Whitney,* for Respondent.

A party claiming title by adverse possession must prove it. (Sackett Instructions, 126; 1 Am. & Eng. Enc. Law, 303; *Hubbard* v. *Kiddo,* 87 Ill. 578.)

Adverse possession depends upon the intention under which the land was taken and held. (1 Am. & Eng. Enc. Law, 227; 1 Thomp. Trials, §§ 1407, 1410; Woods Lim. 507, 513.)

In all cases if a person under a mistake as to the boundaries enter and occupy land not embraced in his title, claiming it as his own for the requisite statutory period, he thereby becomes invested with the title thereto by possession, although his entry and possession may have been founded upon a mistake. (Woods Lim. § 263; *Parker* v. *Metzger,* 12 Or. 407; 1 Am. & Eng. Enc. Law. 281; *Vandall* v. *St. Martin,* 42 Minn. 163.)

If there be several adverse occupants, the last one may tack the possession of his predecessor to his, so as to make a continuous adverse possession for the period required by the statute, provided there is a privity of possession between such occupants. (*Shuffleton* v. *Nelson,* 2 Saw. 540; *Haynes* v. *Boardman,* 119 Mass. 414; *San Francisco* v. *Fulde,* 37 Cal. 352; 99 Am. Dec. 278; *Innis* v. *Miller,* 10 Martin, 289; 13 Am. Dec. 330.)

Such tacking, continuity and connection may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the possessor or of his possession, and is accompanied by a transfer of possession in fact. (*Weber* v. *Anderson,* 73 Ill. 439; *Kruse* v. *Wilson,* 79 Ill. 233; *Zeilin* v. *Rogers,* 21 Fed. Rep. 103; *Swift* v. *Mulkey,* 14 Or. 59; *Sherin* v. *Brackett,* 36 Minn. 152; *Faloon* v. *Simshauser,* 130 Ill. 649.)

It was the province of the jury to ascertain from the

evidence the facts as to the confines or lines of this land in dis-
pute, and the jury had the right to consider both the natural
and artificial boundary marking this land to ascertain the same.
(1 Bouv. Dict. 218; Woods Lim. 515; *Brumagim* v. *Bradshaw*,
39 Cal. 24.)

To entitle an instruction to be given, it must be wholly cor-
rect in point of law, as well as applicable to the facts in evi-
dence in the particular case. (*Grand Trunk R. Co.* v. *Latham*,
63 Me. 177; *Roberts* v. *Parrish*, 17 Or. 583.)

So when an instruction asked cannot be given without
being modified, the court should refuse to give it; besides it
is always proper to refuse instructions which would more
likely mislead than instruct the jury. (*Hodges* v. *Cooper*, 43
N. Y. 216; *Garlick* v. *Bowers*, 66 Cal. 122; *Dwyer* v. *Bassett*,
63 Tex. 275.)

LORD, J.—This is an action in ejectment brought by the
plaintiffs against the defendant to recover the possession of
certain lands described in the complaint.

The answer denies all the material matters alleged
except the possession of the defendant, and for a separate
answer alleges: "That neither of said plaintiffs, nor any
ancestor, predecessor or grantor of either of them was seized
or possessed of any part of said lands within ten years next
before the commencement of said action." And "that de-
fendant and his grantors were for more than thirteen years
immediately before the commencement of said action in
the visible, open, notorious, uninterrupted, and exclusive
possession of the whole and every part of said lands under
a claim of right thereto, and also, under color of title by
deed, claiming to own the whole and every part of the same
in fee simple, adversely to each and both of said plaintiffs."

The reply puts in issue all the material allegations of the
separate defenses. Issue being thus joined, a trial was had,
which resulted in a verdict and judgment in favor of the
defendant. From this judgment the plaintiffs appeal to

this court, and specify several errors upon which they rely
for its reversal.    These alleged errors consist of objections
to the admission of certain evidence introduced by the de-
fendant, and exceptions to certain instructions given, and
to certain instructions refused by the trial court.    With one
exception, all of these objections and exceptions involve
the same principle of law, and to better understand them,
some statement of the evidence is necessary.    The evidence
shows that in January, 1877, R. M. Webster purchased from
Johannes Thomas, for a certain money consideration, a
tract of land, which he represented and Webster under-
stood included the land in dispute as a part of it; that the
tract in the deed executed to Webster is described by metes
and bounds and contains two hundred and three acres, and
that the land in dispute at the time of such sale was under-
stood to be included within this description and number of
acres, when in fact it was without the description and in
excess of that number of acres; that the land was not sold
nor bought by the acre, but as a tract, and as a part of such
tract included the land in dispute; that Webster could not
have made the purchase without including the land in dis-
pute, as Thomas refused to sell the tract unless Webster
would take to the center of the lake as his south line, which
embraced the land in dispute; that Webster went into pos-
session of the whole tract, including the land in question,
and remained in actual possession of the whole until the
year 1884, or about seven years, when he sold the same
tract for a valuable consideration to one Volle; that the
transaction in respect to Volle shows that Webster repre-
sented and understood at the time of the sale that the land
in dispute was included in the tract which he sold to Volle,
and that Volle understood when he purchased the tract
that the land in question was included as a part of it; that
the land was sold by the tract and not by the acre, and
that the deed executed by Webster to Volle, in pursuance

of their understanding, contained the same description and number of acres as did the deed of Thomas to Webster, and did not include the land in dispute as the partners supposed that it did; that Volle went into possession of the whole tract, including the land in dispute, and so remained in possession of it, until the year 1889, or about five years. Upon these facts no question is raised but that both Webster and Volle were in the actual possession of the land in dispute during the respective periods already mentioned, nor that the defense of adverse possession under the statute of limitation is well maintained, if there exist a privity between Webster and Volle as the successive holders in relation to the land in controversy.

The point of contention for the plaintiffs is, that the court, in the admission of the evidence, and in giving the instructions excepted to, proceeded upon the theory that only a transfer of a claim of right and possession by Webster to Volle was necessary to continue the running of the statute of limitation. As counsel for the plaintiffs proceeded to discuss the assignments of error in the reverse order in which they are stated in the bill of exceptions, we shall pursue the same order. Before, however, referring to the particular instructions by which it is claimed the trial court insufficiently defined or misapplied the doctrine of privity between successive adverse holders, it will be better to briefly review some preceding instructions to enable us to better understand the instructions specially criticised. The trial court after stating the issues and explaining adverse possession, among other things, charged the jury to the effect that there was no evidence to show that the defendant's grantors or predecessors ever had a color of title, or any conveyance in writing to the premises in controversy; that at the time of the sale of the land by Thomas to Webster, Thomas as a part of the transaction sold Webster the disputed tract, and that Webster went into the possession of the whole of it, but that by mistake of the par-

ties, or surveyor, or both, or all of them, the deed failed to include the land in dispute; that the evidence in this regard was admitted for the purpose of enabling the jury to determine the character of the entry and possession of Webster, and not to show that Thomas conveyed to Webster by deed any interest in the disputed tract; that land titles cannot be conveyed by parol, or otherwise than by deeds duly executed; that in the case of Volle, as to this disputed tract, in order to keep the statute running, there must be some privity between Webster and Volle, and that this involved another requisite of adverse possession, which is, that it must be continuous; that adverse possession must continue without interruption for ten years; that if one in adverse possession before the expiration of the ten years abandon his possession, the true owner becomes seized at once; and if another then make a hostile entry under a new claim of right, the statute begins to run anew, and the period of limitation would have to be estimated from the date of the new entry; that a person thus entering hostilely is a disseisor, and that two independent and successive disseisors cannot have their independent periods of possession tacked or joined together to make the full period of ten years.

We now come to the instructions to which the exceptions are taken, and as to which it is urged the doctrine of tacking as between successive adverse holders is not properly defined. The trial court said: "In this case the evidence tends to show that Webster's possession, if any, of the disputed tract, was only from 1877 to 1884, or about seven years, which was not long enough, even if adverse, to give him a title by adverse possession. And the same may be said of Volle, whose possession the evidence tends to show was from 1884 to 1889, or about five years. So that in order to constitute the full period, the time of Webster's possession must be added and joined to that of Volle, even if the two were adverse. In order to justify

you in so adding them in estimating the period of ten years' adverse possession, if adverse, you must find from the evidence I have referred to about the transaction between Webster and Volle, that Webster held the adverse possession and transferred his adverse possession to Volle, and that Volle's entry was made, if made, not only under a claim of right, but under a claim of right received from Webster. Even if Volle went into possession at the very moment that Webster went out, the two periods cannot be joined unless privity exist between them. It is not the time between the periods of possession, but the relation of the successive occupants as to their privity that determines the question. You will find from the evidence whether that is the case; and if it was, then the two periods of possession of Webster and Volle, if adverse, may be both considered together in estimating the statutory period of limitation; otherwise not."

It is claimed that these instructions offer an insufficient and misleading definition of privity between successive adverse holders of real property, in this, that they disregard the element of contract necessary to be present to show privity between Webster and Volle as successive adverse holders of the land in dispute. But this is not so. The evidence showed that it was the tract of land including the land in dispute which the contract covered in the contemplation of the parties at each successive sale, although the description in their deeds did not embrace it.

By their agreements it was included, sold and bought as a part of the tract, but there is no pretense that there was any conveyance of it by deed. In a word, their deeds did not cover all the land that the parties had in mind and supposed they had sold when the respective sales were made; but their conduct in relation to the disputed tract indicates that it was taken possession of with the other land as a part of the consideration for such sales; that they entered upon and occupied the land, claiming it as their

own, although not embraced in the description of their title. If the successive transfers of possession were made, as the evidence in fact indicates, it is plain that the court deemed it immaterial whether they were effected by a verbal or written agreement.

To establish privity of possession, the later occupant must enter under the prior one, and must obtain his possession either by purchase or deed. "Where the possession is actual," said DEADY, J., "it may commence in parol without deed or writing; and I am of the opinion, both upon reason and authority, that it may be transferred or pass from one occupant to another by a parol bargain and sale accompanied by delivery. All the law requires is continuity of possession, where it is actual." (*Shuffleton* v. *Nelson*, 2 Saw. 545.)

Unless the successive adverse possessions are connected by privity, the true owner is restored to his possession when the first occupant quits; and an entry afterwards by another wrongfully constitutes a new disseisin. But if such successive possessions are connected by any agreement or understanding which has for its object a transfer of the rights of the possessor, and is accompanied by a transfer of possession in fact, it is sufficient.

"Doubtless," said BUTLER, J., "the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance or agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact." (*Smith* v. *Chapin*, 31 Conn. 531.)

In *McNeeley* v. *Langan*, 22 Ohio St. 32, the court says: "The mode adopted for the transfer of possession may give rise to questions between the parties to the transfer; but as respects the rights of third persons, against whom the possession is held adversely, it seems to us to be immaterial, if

successive transfers of possession were in fact made, whether
such transfers were effected by will, by deed, or by mere
agreement, either written or verbal."

When it was shown that Webster obtained the possession
of the land in dispute in 1877, and held possession of it,
claiming it as his own, until 1884, at which time Volle
obtained the possession of it, it became important to connect
him with Webster in order to make a connected and con-
tinuous possession for ten years. The evidence upon this
point has been stated. It shows that Volle entered into
possession under an agreement or understanding which
included the land in dispute. It is true, that agreement
was verbal and that the conveyance which was executed
in pursuance of it failed to embrace the land in dispute;
nevertheless that agreement included it and established
privity between Webster and Volle, so that it connected the
successive adverse possessions of Webster and Volle. That
contract was sufficient to convey Webster's possession, and,
when accompanied by a transfer of possession in fact, it was
sufficient to make their joint possession continuous. The
bargain and sale was of the whole tract, including the part
of it in controversy, which was omitted by mistake in the
deed, but nevertheless there was a bargain and sale of it,
accompanied by a delivery of possession, which suffices to
establish privity of possession between such occupants.
When the court in its instructions charged the jury that in
order to connect the adverse possessions of Webster and
Volle, they must find from the evidence that Webster had
the adverse possession of the land in dispute and transferred
it to Volle, and that Volle's possession was taken not simply
under a claim of right, "but under a claim of right received
from Webster," and that the two periods of their possession
cannot be joined unless privity exists between them, it
plainly meant, and especially in view of the preceding
instructions and their explanatory phrases, that the jury
must find from the evidence that their successive adverse

possessions must be connected by some agreement or under-
standing between them, or else how is Volle's possession to
be derived under a claim of right received from Webster,
or how is any privity to exist between them, as stated in
the instructions, upon the facts of the case, unless there was
some understanding or agreement to create it?

What is the claim of right which Volle received from
Webster but the possession of the land in dispute under
the verbal agreement for the whole tract of which it was a
part? It is true, the verbal agreement did not convey the
title to such tract or any part of it, but it was sufficient to
convey any possessory rights that Webster had to it, or any
portion of it, and therefore was sufficient to transfer all his
possessory rights to that portion of the tract not included in
his deed, when accompanied by a transfer of possession in
fact.

In view of the facts, it is impossible to construe or under-
stand the instructions otherwise. The court did not pro-
ceed on the theory in the admission of the evidence, or in
giving its instructions, or in refusing those asked by plain-
tiffs, that there must not be privity of possession between
the occupants, or that there could be such privity without
some agreement or understanding, written or verbal. Hence,
there was no error in receiving such evidence, or in giving
the instructions excepted to, or in refusing those asked, for
they all involve the same contention as error.

As it seems to us, the vice of counsel's argument is, that
they detach an isolated portion of the instructions, and by
a purely verbal criticism seek to draw the inference from it,
without regard to explanatory phrases or paragraphs, that
the trial court disregarded the element of contract in apply-
ing the doctrine of privity between successive adverse holders
of the possession of real property. Having reached this con-
clusion from the instruction, when they came to criticise or
make their objection against the evidence, they seem to
assume that the court ignored the element of contract in

its admission necessary to create privity between Webster and Volle, as successive adverse holders of the land in dispute, but the facts are otherwise. The whole matter was submitted to the jury under instructions calculated to guide them rightly in the determination of the facts.

"In order to create the privity requisite to enable a subsequent occupant to tack to his possession that of a prior occupant, it is not necessary that there should be a conveyance in writing It is sufficient if it be shown that the prior occupant transferred his possession to him, even though by parol." (Wood on Lim. § 271.)

The evidence shows that the land in dispute constitutes as much a part of the land bargained and sold as the part conveyed by deed; and although no title was conveyed to it, it was within the understanding of the parties, and possession of it was transferred. This was done by parol, and the instructions of the court properly cautioned the jury in regard to this particular.

We discover no error, and the judgment must be affirmed.