Argued 22 July ; decided 18 August 1902.

### WEST *v.* EDWARDS.

[69 Pac. 992.]

ADVERSE HOLDING—PRIVITY OF POSSESSION—EVIDENCE.

1. In establishing adverse possession consisting of successive holdings, privity between the successive holders is necessary, but this may be by oral as well as written contract, if the holdings all refer to one source of claim, and there is actual possession.

NATURE OF POSSESSION UNDER CONTRACT TO PURCHASE.

2. One in possession of realty under a contract to purchase cannot claim adversely to his vendor until after performance of his part of the agreement; but thereafter his holding is in his own right, without reference to the completion of the contract by the vendor.

ADVERSE POSSESSION—EVIDENCE OF PRIVITY AND CONTINUITY.

3. The owner and occupant of a tract containing one hundred and fifty acres sold and contracted to convey the entire tract. The purchasers went into possession of the whole tract, and received a deed which was supposed to convey all, but which omitted a triangular piece of about nine acres. Thereafter they sold and delivered possession of the whole tract, giving a deed containing the same description as in the deed to them. From such purchaser the title and possession passed through various conveyances to plaintiff, each purchaser holding possession of the entire tract until he passed the possession to his vendee. More than ten years after the first sale, their grantor having died, the first purchasers obtained deeds to such omitted nine acres from all their grantor's heirs, and legatees. *Held*, that defendants' possession of the nine acres was adverse to their grantor from the time they received their first deed, and that there was such privity and continuity of possession between them and the subsequent purchasers, to and including plaintiff, that the title of such

original owner and his heirs was lost before such heirs executed deeds to defendants, and they acquired no title or interest in such nine acres by such deeds.

From Marion: REUBEN P. BOISE, Judge.

Suit to quiet title by A. L. West against Arthur and Thomas Edwards. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. B. F. Bonham* and *Mr. Carey F. Martin.*

For respondents there was a brief over the names of *John W. Reynolds, William H. Holmes* and *Alva O. Condit,* with an oral argument by *Mr. Reynolds* and *Mr. Holmes.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is a suit instituted September 4, 1901, to quiet the title to certain real property, consisting of eight acres, more or less, of which plaintiff is in possession, claiming title thereto by adverse possession, extending back through himself and predecessors to June 8, 1891, and the defendant Arthur Edwards claiming by deed from the heirs and legatees of Thomas H. McIntire, deceased. The decree of the court below being in favor of the plaintiff, the defendants appeal.

The facts are that Thomas H. McIntire had been the owner and in the exclusive possession of the property for more than eighteen years prior to May 6, 1891, upon which latter date he executed to Arthur Edwards a bond for a deed or contract for the conveyance of a tract of land, designated as containing 150 acres, more or less, which included the parcel in controversy, for the consideration of $5,250, the conveyance to be made upon the payment of the second installment thereof of $3,050 on July 6, 1891, $1,000 having been paid in cash, and by the same instrument Edwards agreed to execute to McIntire a mortgage on the premises, to secure the balance of $1,200, payable on or before May 1, 1895. Upon the execution of this bond, or shortly

thereafter, McIntire surrendered, and Arthur Edwards and his father, Thomas Edwards, entered into the possession of the whole of such tract. The second installment designated in the bond or contract having been paid, McIntire and wife, on June 8, 1891, executed and delivered to Arthur Edwards a deed, but which omitted the parcel in dispute, and this was accepted by him and placed of record. On August 25, 1892, Arthur Edwards gave his deed to the Oregon Land Company, containing the same description as the McIntire deed, and in the meanwhile Arthur and Thomas remained in possession, exercising ownership over the whole, and continued thereon until October or November, when the Oregon Land Company entered into possession of the same tract, occupying and improving the same, until on March 19, 1898, at which time it made a general assignment to Charles Scott for the benefit of its creditors, which assignment included the property in dispute. Scott thereupon entered into possession, and on November 20, 1900, conveyed and surrendered the same to B. B. Cronk. The plaintiff derives title and possession from Cronk, his deed bearing date March 12, 1901. McIntire having died in the meanwhile, Arthur Edwards, on July 18, 1901, obtained a quitclaim deed to the premises from his widow, heirs and legatees, who derived from McIntire whatsoever title he had thereto through his last will and testament.

It will be readily seen from these facts, which are uncontroverted, that in order to prevail plaintiff must first establish the further fact that Edwards began to hold adversely to the McIntires and all other persons prior to or at the time Arthur obtained his deed from McIntire; and, second, a continued adverse holding through his predecessors and by himself from that time on for a period of ten years. The pivotal dispute centers about the transaction between McIntire and the Edwardses, and the conveyance and delivery of possession by Arthur Edwards to the Oregon Land Company. There is testimony tending strongly to show that Arthur Edwards took the contract for a deed and the title deed itself in his name for the purpose of holding the property in secret trust for his father, who at that time was having trouble with his wife, and from whom he subsequently procured a divorce.

Arthur was at the time but 22 years of age, had little or no means, and furnished, if anything, only about $500 towards the purchase from McIntire; while the father paid upon the contract to the time the deed was made more than $3,500, if not the entire amount, and subsequently paid interest on the balance to the school fund, and, very shortly after the sale to the Oregon Land Company, Arthur assigned to him the mortgage that was executed to secure a portion of the consideration of the sale to such company. Other testimony tends strongly in the same direction, and we are convinced that such was the case. The inquiry is not of very great importance, however, except that it renders competent and relevant much that Thomas Edwards has said relative to the purchase from McIntire and the sale to the Oregon Land Company, to which we will now briefly allude.

The allusions herein to Arthur Edwards and the Edwardses interchangeably touching possession and title are made in view of such existing trust relations, and should be so understood. I. M. Wagner testifies that the old gentleman (meaning Thomas Edwards) told him since this suit was begun "they had supposed the place to be sold when they sold the rest of it,—this place in dispute,—but, finding it was not described in the transfer, they just let it alone"; and on cross-examination says: "That was in reference to this suit. I asked him if he had instituted a suit for possession of a part of the old place, and if he had not sold the place and got his pay for it; and his answer was they supposed they had sold the whole of it, but when the deed was made out this particular part was not described in the transfer, so they let it alone." B. B. Cronk testifies that the old gentleman told him that he had bought this property from McIntire, and sold the same and got his money for it; that witness asked him about the matter, especially with reference to making a warranty to the title, and he answered that the title was all right, and that no man had any claim on that property. In this Cronk is corroborated in part and contradicted in part, the old gentleman denying in toto. Arthur Edwards testifies that he held possession until November 1, 1892, and that he then gave the Oregon Land Company possession. He says, however, that he told

the Oregon Land Company at the time of its purchase that he could not sell this piece, and that he especially reserved it. Mrs. McIntire, the widow of Thomas H., testifies that they sold to the old gentleman, and that he went into possession about the 10th of April or May, 1891, when they went out; that they sold to him all the land they had there, and surrendered possession of the whole. It is admitted by defendants that at the time Arthur received the deed from McIntire he supposed he was obtaining a conveyance to the entire McIntire farm, and they also admit that the Oregon Land Company, when Arthur surrendered the same, took possession of "the entire field, including the small triangular piece, to which neither it nor its grantor had any deed." W. A. Rice testifies that he was in the employ of the Oregon Land Company in 1891 and 1892; that the company bought the place about August, 1892, and some time later, in the fall, after Arthur Edwards had harvested the crop, took possession. Then follows other testimony showing that the company improved the property; that it took out some oak trees standing upon this particular parcel, set out prune trees upon a part of it, and cultivated them while it continued in possession and until the time of the assignment. It will be noted that the contract or bond for a deed executed by McIntire to Arthur Edwards stipulated for the execution of a deed on payment of the second installment of the consideration, July 6, 1891, and Arthur agreed to give a mortgage back for the balance of the purchase price, being $1,200, payable on or before May 1, 1895. It seems that the second installment was paid earlier, viz., on June 8, 1891, and the deed was then given by McIntire, Arthur supposing as he admits, that he was obtaining a conveyance of the entire tract bargained for by the terms of the bond or contract; but there appears to have been a mortgage on the premises executed by McIntire to the school fund commissioners to secure a like sum of $1,200, and this was permitted by mutual understanding of the parties to remain in the place of the mortgage stipulated for by the bond. In this view, McIntire's contract was in all essential and material respects executed, except for the oversight in misdescribing the premises to be conveyed.

1. Privity of possession between successive adverse holders is requisite to the establishment of continuity, but a verbal contract or agreement is sufficient for the purpose. It need not be by deed or writing: *Shuffleton* v. *Nelson,* 2 Sawy. 540 (545, Fed. Cas. No. 12,822). Says Mr. Justice Lᴏʀᴅ, in *Vance* v. *Wood,* 22 Or. 77, 85 (29 Pac. 73) : "But if such successive possessions are connected by any agreement or understanding which has for its object a transfer of the rights of the possessor, and is accompanied by a transfer of possession in fact, it is sufficient." See, also, *Rowland* v. *Williams,* 23 Or. 515 (32 Pac. 402) ; *Smith* v. *Chapin,* 31 Conn. 530; *McNeely* v. *Langan,* 22 Ohio St. 32. The case of *Vance* v. *Wood* is much like the present. Webster sold to Volle by verbal agreement a certain tract of land, but in executing the deed omitted a portion by mistake. He delivered possession, however, of the whole, and Volle entered claiming title, and the continuity of the adverse holding was upheld through the verbal agreement and the acts of the parties with reference to it.

2. Another principle of law of controlling importance herein is that a person holding realty under an executory contract for its purchase cannot claim to hold adversely to its vendor. If, however, he has paid the full purchase price agreed upon, and has otherwise performed the stipulations of the contract on his part, so that he is entitled to a conveyance, henceforth his possession is adverse, and he can insist upon it whether he has obtained his deed or not: *Anderson* v. *McCormick,* 18 Or. 301 (22 Pac. 1062) ; *Ambrose* v. *Huntington,* 34 Or. 484 (56 Pac. 513). Governed by these settled principles, we may determine this controversy upon the evidence adduced, the controlling features of which have already been adverted to.

3. That McIntire and wife delivered possession to the Edwardses, one or both, some time before the execution of the deed, in pursuance of the stipulation of the bond, and that they entered claiming title to the whole, including the parcel in dispute, there can no longer be any question. Arthur believed that he was obtaining a deed to the whole, and the conclusion is irresistible that he claimed title according to what he supposed he was get-

ting by his deed. Indeed, he says as much, that he took possession out to the road, and claimed to own it. Further, according to his own statement, he gave the Oregon Land Company possession. But notwithstanding this concession he says he especially reserved the tract in dispute when he sold to the company. The subsequent acts of the parties, however, are so at variance with the hypothesis that we think there must be some mistake about it. The Oregon Land Company not only entered into possession upon surrender by Edwards, but improved the property, and exercised acts of ownership over it, as though its right thereto was absolute. From the sale to the Oregon Land Company, in 1892, until recently, Edwards has made no claim whatever to the land. This feature he seeks to explain by the fact, as he asserts, that the contract with McIntire had been lost in the meanwhile, and he did not know his rights therein; that Chambers claimed it, and that he did not know whether he had a better right than Chambers. This does not comport with the idea that he supposed he was obtaining a deed thereto from McIntire, nor with the fact that he gave possession to the Oregon Land Company, and it indicates in reality that he did not know of the mistake in the deed from McIntire until long after the Oregon Land Company purchased and entered into possession. It is urged that the deed by Arthur to the Oregon Land Company purports to convey 149.30 acres, more or less, and therefore that it was not intended to include the controverted parcel; but the bond given by McIntire purported to convey 150 acres, more or less, so that the circumstance is of but little weight. It is also suggested that the Oregon Land Company some time in August, 1897, took a deed from E. J. Chambers, and gave him back a mortgage to secure the sum of $125, and that these transactions are inconsistent with the theory of an adverse holding in pursuance of another supposed title. The company had a right, however, to buy off a disputed claim if it desired, and the circumstances would not stand in the way of its holding in pursuance of another title. There is absolutely no evidence in the case that Chambers ever had title to the land. Indeed, the course of both parties to the controversy proceeds upon the theory that he never

had title, and that his claim thereto was pretended only. The acts of the parties in taking and giving possession, and in exercising ownership, speak so strongly of a claim of right and title accompanying them that we cannot conclude otherwise than that Arthur, either singly or together with his father, claimed title to the whole McIntire tract, and so continued in such possession under such claim of right until they surrendered to the Oregon Land Company, and from thenceforth to the time of the assignment the company occupied under actual claim of right exclusively and adversely to all persons whomsoever. That the Edwardses intended by the deed of Arthur to convey the whole tract, and primarily so agreed with the Oregon Land Company verbally, we think is clearly shown by the weight of the testimony, thus conjoining his holding with that of the company, with the necessary privity to establish the requisite continuity in the running of the statute. Thenceforth there can be no controversy as to the character of the possession. The holding has been adverse and continued down to and by the plaintiff.

As to the other feature of the case, touching the running of the statute of limitations while the Edwardses were in possession, it might be said that the McIntire bond was not fully executed, but it was so intended by the execution of the deed, and both parties acted upon the supposition that it was in reality so executed. The consideration was fully paid, except $1,200, and that was allowed to remain because there was a mortgage to the school fund commissioners upon the premises for a like amount at the time, which Arthur concedes he assumed to pay. The fact of the existence of this mortgage was accepted as a fulfilment of the condition that the Edwardses should execute to McIntire a mortgage for such balance, and the contract was to all intents and purposes fully performed on the part of Edwards. Thenceforth he was accountable to the school fund commissioners, and did so account, as Thomas says he made some payments of interest to the school fund for Arthur, and that the last $600 was paid by the Oregon Land Company about four years ago, it having assumed to pay the same. In any event, Edwards was entitled to a deed July 6, 1891, to the whole tract under the bond, which

he claims stands in the way of the running of the statute of limitations, having paid the second installment of the consideration in full by the tender of the mortgage stipulated for. But this condition was waived, as well as the time of the payment of the second installment, so that Edwards became absolutely entitled to the deed at the time of the payment of such second installment; and the statute of limitations began to run against McIntire as of that date, and has continued without interruption down to the time of the institution of this suit. The statute began to run, therefore, against the McIntire title and all the world on June 8, 1891.

The defendant Arthur Edwards claims title through McIntire by his deed from the heirs and legatees, executed July 18, 1901, which being more than ten years after the statute began to run, they had no title to convey, and Arthur acquired none. The plaintiff is therefore entitled to the relief demanded, and there will be an affirmance of the decree of the court below.

AFFIRMED.