Argued April 12, affirmed July 31, 1956

# DU VAL ET UX *v.* MILLER

300 P. 2d 416

*Orval Thompson,* of Albany, argued the cause for appellant. On the brief were Weatherford and Thompson, of Albany.

*Laurence Morley,* of Lebanon, argued the cause for respondents. On the brief were Morely and Thomas, of Lebanon.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

BRAND, J.

The plaintiffs A. L. Du Val and Amelia E. Du Val brought this action in ejectment against Leora Miller to recover the strip of land described in the com-

plaint extending east and west a distance of 280.5 feet, being 7.20 feet wide at the west end and 4.05 feet at the east end. The trial court by stipulation of the parties tried the case without a jury and entered judgment for the plaintiffs. Defendant appeals. The controversy was between the owners of adjoining tracts of land and the question for decision was the location of the line between them. Defendant is the record owner of Lot 8, Block 3, Nye's Addition to Sweet Home. Plaintiffs are the record owners of the land directly south of defendant's lot. The disputed strip of land lies within Lot 8, Block 3, and is therefore within the area covered by defendant's deed. Plaintiffs claim title by adverse possession.

In the pending action of ejectment filed on 18 November 1948 the plaintiffs briefly allege that they "are and for many years prior hereto have been the owners and entitled to the possession of the following described property to-wit:", describing it. They further allege that defendant for more than three months has kept plaintiffs out of possession and they pray for possession and damages. Defendant by her answer alleges that she is "the owner in fee simple of * * * and together with her privy's in title has been in the open, continuous, hostile, exclusive, adverse, notorious, and actual possession of said property for more than thirty years last past." As a separate defense the defendant alleges than on 25 July 1946 the same plaintiffs brought suit against the defendant Miller to quiet title to a tract of land which included the land held by plaintiffs under deed, plus the disputed strip to which plaintiffs claimed title by adverse possession. It is then alleged that the litigation in the quiet title suit covers the identical property described in plaintiffs' complaint

in ejectment and that "all matters and things stated in plaintiffs' complaint were and are adjudicated against plaintiffs and in favor of defendant" in the equity suit. Defendant also reiterates the above defense and pleads that plaintiffs are estopped by the prior litigation to prosecute the pending action and that plaintiffs elected to proceed in equity and to abandon any remedy at law and are thereby estopped. Supporting the defenses of res judicata and estoppel the defendant in her answer sets forth (1) the complaint, answer and reply in the suit to quiet title, (2) the decree of the circuit court in favor of plaintiffs, (3) the appeal to the Supreme Court, (4) the mandate of this court reversing the decree below, and (5) the decree of the circuit court dismissing the suit pursuant to the mandate. For the opinion of this court in the suit to quiet title, see, *Du Val v. Miller,* 183 Or 287, 192 P2d 249, 192 P2d 992.

Plaintiffs have never had any deed to the disputed strip signed by any record owner thereof. The record title is in the defendant. If the plaintiffs are to prevail in this action for ejectment it must be based upon substantial evidence of open, adverse, notorious and exclusive possession of the narrow strip of land immediately north of and along the true deed line. The burden upon the plaintiffs was to establish adverse possession by clear and positive proof. *Laurence v. Tucker,* 160 Or 474, 484, 85 P2d 374. We recognize that the findings of the trial court must be accorded the force and effect of a verdict by a jury.

It is the contention of the plaintiffs and it was the finding of fact by the circuit court that Duncan acquired title in fee by adverse possession beginning 16 March 1929, which is the date on which Duncan and his wife received their deed from Nye and wife, and

that the adverse possession continued until August
1941, which was the month and year in which Owen
R. Duncan and Alta M. Duncan (now Alta M. Duncan
Long) deeded the southern lot (not including the dis-
puted strip) to the plaintiffs. The court found that
by virtue of such possession Owen R. Duncan ac-
quired title in fee. The findings of fact also read, in
part, as follows:

> "That the plaintiffs, A. L. Du Val and Amelia
> Du Val succeeded to the title of O. R. Duncan in said
> disputed property by virtue of tacking having con-
> tinued from the month of August, 1941 until late
> in the year 1942, open, continuous and hostile pos-
> session to said real property and that the said O.
> R. Duncan did sell the said disputed property in
> the month of August, 1941, to the said plaintiffs
> by orally describing said land and pointing the
> same out to the plaintiffs and having bounded the
> said property by a fence and other construction
> and describing the same to the said plaintiffs as
> the property which they were purchasing; that no
> deed was given by the said O. R. Duncan to the
> plaintiffs but the possession to the same was de-
> livered to the said plaintiffs and that the plain-
> tiffs took possession of the same by tacking their
> interest thereto."

The foregoing "finding of fact" contains one state-
ment which appears to be nothing but a conclusion of
law. As stated by the trial court, the deed from the
Duncans did not include the disputed strip. How then
could it be said that "Duncan did sell the disputed
property * * * to the * * * plaintiffs."?
If Duncan had adversely possessed the strip for a
part of the prescriptive period and plaintiffs in
privity with Duncan had continued the adverse pos-
session to complete the ten years, the plaintiffs would
have acquired title by tacking. But here the court

found that Duncan acquired title before plaintiffs took possession. The rule concerning the tacking of two or more adverse possessions has been generally stated, as follows:

> "It is permissible to unite the periods of possession of successive holders to complete the prescriptive period, provided there are no abandonments or other interruptions automatically returning seizin to the owner." 2 CJS 685, Adverse Possession, § 128.

Again, we quote:

> "In order to come within the requirements as to continuity of possession, as stated in the preceding sections, it is not necessary that an adverse possession should be maintained for the statutory period by one person. Continuity may be just as effectively shown by the successive possessions of several persons between whom the requisite privity exists. This is called tacking. And where the successive possessions of those in privity with each other, when tacked together, constitute one continuous adverse possession for the statutory period, it will be sufficient, providing, of course, the other elements of adverse possession are also present." 1 Am Jur 879, Adverse Possession, § 151.

■ It is clear, not only from the above authorities, but also from our own decisions, that the doctrine of tacking applies only when one person is in adverse possession of property for less than the prescriptive period and another in privity with him continues the adverse possession for a time sufficient to complete the prescriptive period. The rule is applied and explained in *Low v. Schaffer*, 24 Or 239, 33 P 678.

Plaintiffs cite three cases in support of the contention that though privity is necessary between successive adverse holders, such privity may be estab-

lished by oral as well as written contract if the holdings all refer to one source of claim and there was actual and continuous possession. The first case cited, *Swift v. Mulkey,* 14 Or 59, is not in point. The next case cited is *Vance v. Wood,* 22 Or 77, 29 P 73. That was an ejectment action in which defendant set up adverse possession. The facts in some respects resemble those in the case at bar, but there are also material differences. Defendants, relying on adverse possession, showed that one Thomas sold a tract to Webster, both buyer and seller believing, though mistakenly, that the deed covered the disputed tract. Webster remained in possession for seven years and then sold the same to Volle by the same descriptions, buyer and seller again erroneously believing that the deed covered the disputed tract. Volle remained in possession of the disputed tract for five years. It was held that the possession of Webster and Volle established the defense of adverse possession if there was privity between them. This court then considered and approved the instructions on privity. The court said:

> "* * * But if such successive possessions are connected by any agreement or understanding which has for its object a transfer of the rights of the possessor, and is accompanied by a transfer of possession in fact, it is sufficient."

It was held that privity could be established by mere oral agreement. That case supports the plaintiffs' contention as to the requisites for establishing privity, but the tacking of possessions in that case was a joining of two possessions, neither of which alone was of sufficient duration to establish title by adverse possession, but which, when joined, exceeded the ten-year period.

The third case cited by the plaintiffs is *West v. Edwards,* 41 Or 609, 69 P 992. It is similar in effect to *Vance v. Wood,* supra.

■ The following cases make it clear that the doctrine of tacking is applied only to establish continuous possession for the statutory period: *Rowland v. Williams,* 23 Or 515, 32 P 402; *Clark v. Bundy,* 29 Or 190, 44 P 282; *Quinn v. Willamette Pulp & Paper Co.,* 62 Or 549, 126 P 1; *Anderson v. Richards,* 100 Or 641, 198 P 570. We conclude that the doctrine of tacking applies only when it is necessary to tack in order to establish adverse possession for the statutory period. It has no application in the pending case, where the trial court found

> "* * * That O. R. Duncan for more than 10 years continuously, beginning March 16th, 1929, and until August, 1941, openly hostily and adversely claimed and maintained possession of the above described real property which was then of record in the name of Marvin Nye and wife, and by virtue of said adverse, hostile, open and continuous possession acquired the fee to said real property."

If this finding is supported by substantial evidence, then Duncan was the owner in fee prior to his deed to the plaintiffs on 29 August 1941. If the plaintiffs claimed adversely thereafter, it must have been against Duncan, not against the defendant Miller, for by the trial court's decision Mrs. Miller had lost title before the Du Vals purchased the property. If the plaintiffs desired to acquire the disputed strip from Duncan, the owner, they would have to acquire an interest in the land by deed, or themselves occupy it adversely for ten years. The trial court erred in applying the doctrine of tacking. What this court said

in the equity suit between these parties involving title to this same tract is applicable here:

"It is clear that the only land which the Duncans conveyed to the respondents is the rectangular parcel 280.5 by 70 feet. That is the only tract which their deed describes. If the Duncans, by adverse possession, expanded their holdings until the latter achieved the size mentioned in the complaint, that availed the respondents nothing since the deed to them conveyed nothing which the purported prescription had won. * * *" *Du Val v. Miller,* supra, 183 Or 287, 292, 192 P2d 249, 192 P2d 992.

We shall now consider the contention that Duncan acquired title by adverse possession prior to the time when he and his former wife deeded the disputed strip to the plaintiffs. We will then consider the defendant's contention that the plaintiffs are barred from recovery by the decree in the suit to quiet title.

A print of a survey was received in evidence without objection. It showed the conditions as of May, 1946, shortly before the filing of the suit to quiet title. That survey showed a fence running easterly from a point 7.20 feet north of the southwest corner of Lot 8, Block 3. There was evidence of an old fence on the property in 1929 which was torn down and rebuilt at substantially the same location as the one shown in the survey. There is evidence that Duncan claimed to the old fence. Duncan built a house in 1930. The north wall was "almost exactly on the south line of plaintiffs' Lot 8 and the eaves extended northerly from the deed line a distance of 6.4 feet." The fence was "seven or eight feet north" of the Duncan house. In 1930 Duncan planted a small patch of potatoes on the northeast corner of the property. The ground was "plowed as close to the fence as you could with

a team and a plow." Duncan's brother hauled gravel for a driveway in 1932. It was placed "as close to the fence as they could get it." The driveway covered the area where the potatoes had been planted and ran westerly from 18th street (formerly Oak street), which forms the easterly boundary of both properties. Prior to 1937 there was an old shed which straddled the deed line. Duncan's brother tore it down in 1937 and a new shed, or garage, was built at the same location. The old shed was built "right over against the fence." The new shed which occupies the same location as the old, is shown on the survey. It extends to the old fence line. Duncan did not live on the property all of the time, but there was "somebody living on the property all of the time." The property was rented part of the time. Although the survey of 1946 shows the fence as extending easterly only about half way to 18th street, there is testimony that previously it ran clear to the street and thus entirely across the defendant's Lot 8, and that it was 7.20 feet north of the deed line at the west end and 4.05 feet north of that line at the east end. Mrs. Du Val testified that the driveway was a graveled road close to ten feet in width and extended from the Duncan house to 18th street and that the north side of the drive was "right up against the fence." Duncan, from whom the plaintiffs purchased, showed plaintiffs the fence as the north line of the property at the time of the sale. The testimony of Max Landon and Albert Fligum which was given in the quiet title suit was received in evidence in this, the ejectment action, by stipulation. Fligum occupied Duncan's house for two years from January, 1938. He built the garage that is now partially on the disputed strip. He occupied all of the

property up to the fence line as then located. Neither of the Nyes ever objected.

After the decision in the quiet title suit the defendant caused a third fence to be built on the true south line of Lot 8, and thereby excluded plaintiffs from the disputed strip and rendered impossible the use of the shed or garage. A photograph shows the fence running directly through that structure which was open at both ends.

■ There is a considerable mass of further testimony supporting the claim of adverse possession, but we think it sufficiently appears that there was a "jury question" which was presented to the trial court for decision.

In addition to their contention that they acquired title by tacking, plaintiffs rely upon the finding of the court supported by evidence that Duncan acquired title in fee by adverse possession and that they acquired a three-fourths interest in the strip by quitclaim deed from Duncan's heirs after his death. The trial court found:

"That subsequent to said date the said O. R. Duncan who had been previously divorced from his said wife passed away and by Will transferred all his estate to his three children, and that three of the said children have conveyed by instrument all of their right, title and interest in and to said disputed property to the plaintiffs herein who holds title by virtue of said deed to an undivided three-fourths interest in said real property of record."

This finding is inadvertently incorrect, as appears from the file in the probate court, which is in evidence. Duncan died intestate in May, 1946, leaving four heirs, three daughters and a son. Three of the

four on 19 May 1948 quitclaimed their interest in the disputed strip to the plaintiffs.

What the Duncan heirs purported to convey by quitclaim deed was a three-fourths interest in the disputed strip which Duncan had acquired by adverse possession. Thus in this ejectment action the plaintiffs' entire case depends upon the claim that Duncan acquired the fee before he conveyed the south tract to the Du Vals. If he acquired title to the strip by adverse possession and continued to hold it until his death, then the deed from the heirs vested title to an undivided three-fourths interest in the Du Vals and such interest would entitle plaintiffs to maintain ejectment against the defendant who then had no title to the disputed strip.

We must now consider the contention of the defendant that the suit to quiet title constituted a conclusive determination adverse to the plaintiffs under the doctrines of res judicata and estoppel.

In 1946 the plaintiffs filed suit to quiet title to the rectangular tract which they held under valid deed (the title to which has never been in issue) plus the irregular disputed strip lying immediately north of the north line of that tract. That complaint alleged ownership in general terms and further charged that the defendant Miller had repeatedly trespassed upon the land, had removed portions of a fence along the northern boundary line of the property, and had threatened to continue trespassing and to erect a building on said lands of the plaintiffs. The defendant by answer set up her record title to Lot 8, Block 3 of Nye's Addition, which includes the disputed strip. There was no question as to the validity of her title to Lot 8, including the strip, unless she had lost it by reason of adverse possession. Thus the only dis-

pute between the parties related to the ownership of the narrow strip of land covered by defendant's deed and included in the land described in plaintiffs' complaint. After trial, the circuit court on 25 July 1947 entered a decree wherein it was held that plaintiffs were owners of the tract described in the complaint, including the disputed strip lying within Lot 8, Block 3, and further enjoining the defendant Miller from interfering with plaintiffs' possession. Certainly if there had been no appeal the plaintiffs could have successfully maintained that the decree as between the Du Vals and the defendant Miller constituted a res judicata barring any further litigation between the same parties over the same disputed strip. However, on appeal that decree was reversed and plaintiffs' suit was dismissed. If the decree for plaintiffs had been reversed without opinion a question of some difficulty might have been presented as to whether all of the issues in the case should be deemed to have been decided on appeal adversely to the plaintiffs. However, the defendant introduced in evidence copies of the opinions of this court on the original hearing and on petition for rehearing. Those opinions show the exact ground on which we decided the case.

In the suit to quiet title the first issue was whether Duncan acquired title by adverse possession. The next and equally vital issue was whether the Du Vals acquired Duncan's title. On appeal we stated that it was the contention of the plaintiff that the Duncans won title to the disputed strip by holding its possession adversely for more than ten years. We said of the plaintiffs that they "do not contend that they themselves acquired title to the disputed strip by adverse possession." In another connection we have already quoted what this court said. See supra. In sub-

stance our holding was that the only property which the Duncans conveyed to the plaintiffs was described in their deed and that if the Duncans had acquired title to the disputed tract by adverse possession that availed the plaintiffs nothing. There was no consideration of the merits of plaintiffs' claim that the Duncans acquired title. We simply said that the plaintiffs had failed to prove title in themselves. This alone necessarily required the reversal of the decree of the lower court. Furthermore, we refused to enter any decree finding that the defendant Mrs. Miller was the owner of the disputed strip.

In the petition for rehearing the plaintiffs attempted to show that they had acquired title by tacking their possession onto that of Duncan. We held that there was no occasion for discussing the rules concerning tacking. We have again considered that matter, supra. In short, the issue of adverse possession by Duncan was involved in both cases. It was not decided in the first case and was not necessary to the decision. It was necessary to the decision in the second case and was decided. It was necessary to the decision of the pending case because, in that case the plaintiffs had supplied what was wanting in the first case, namely, deeds of quitclaim transferring to the plaintiffs a three-fourths interest in the disputed strip, the title to which was found by the circuit court to have vested in Duncan prior to his conveyance to plaintiffs. Under the well-known rule plaintiffs could not prevail in ejectment against the Duncan heir who appears still to own a one-fourth interest in the strip but that question is not before us. The defendant is not the owner of that interest and ejectment will lie against her.

■ We hold that under these peculiar circumstances

the decree of this court in the equity suit operates neither as a res judicata nor as an estoppel. The authorities upon this issue received exhaustive and scholarly consideration in *State v. Dewey,* 62 Adv Sh 35, 292 P2d 799. That decision is decisive of this question. This case presents a most regrettable situation. The parties have been litigating at considerable expense ever since July, 1946, and have twice required the attention of this court, in a case involving a mere sliver of land, when a compromise agreement would have adequately protected both parties. It adds one more unfortunate chapter to the long history of line-fence disputes between neighbors.

The judgment of the circuit court is affirmed.