Argued March 29, affirmed April 21, 1972

# THE PORT OF PORTLAND, *Respondent, v.* MAXWELL ET UX, *Appellant,* WESTERN LAND DEVELOPMENT CO., *Respondent.*

496 P2d 23

*George M. Joseph,* Portland, argued the cause for appellant. With him on the brief were Richard C. Bemis and Bemis, Breathouwer & Joseph, Portland.

*George W. Mead,* Portland, argued the cause for respondent Western Land Development Co. With him on the brief was Alan H. Johansen.

Lofton L. Tatum, Peter G. Voorhies, and Wood,

Wood, Tatum, Mosser & Brooke, Portland, filed a brief for respondent Port of Portland.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

The Port of Portland commenced a condemnation of certain frontage property along the Columbia River in Multnomah County. Included was property belonging to defendants Maxwell. In their answer in the condemnation proceeding Maxwells claimed severance damages for some property additional to that to which they appeared to hold record title, saying that the additional property which lies immediately east of their record title property had been acquired by adverse possession. This prompted the Port of Portland to bring this declaratory judgment suit against defendants Maxwell and defendant Western Land Development Co., which, since 1958, has been the record chain-of-title holder to a large tract of land of which the triangular-shaped parcel to which the Maxwells claimed title by adverse possession was a part. The Port sought a declaration of who owns the disputed property in order that the condemnation might continue. The case was tried to the court which held, after taking evidence, that Maxwells failed to acquire the disputed property by adverse possession and that it is the property of Western Land Development Co. It is from this judgment that the appeal is taken. The primary question is whether the evidence supports the trial court's finding.

The Maxwells acquired a rectangular piece of property fronting for approximately 200 feet on the

Columbia River under a contract for purchase in 1960 from Mrs. Douglas and her husband who is now deceased.

The contract is in evidence and it describes only the rectangular property. Pursuant to its terms, as testified to by Mr. Maxwell and Mrs. Douglas, a deed was executed by Mrs. Douglas to the rectangular property. A copy of the latter is in evidence; it is dated July 30, 1968, and is labeled a "correction deed." There is some confused evidence that Maxwells, and possibly Mrs. Douglas, may have thought an earlier deed executed by Mrs. Douglas (February 13, 1965) described the rectangular property. It actually described the triangular property. No mention of the triangular property is in either the 1960 contract or the 1968 deed. Thus, it is unclear what the 1968 deed "corrected."

Mrs. Douglas and Mr. Maxwell testified that it was the intention to convey the triangular property, which is contiguous to the east boundary of the rectangular property, in the same transaction. The triangular property, according to the testimony and exhibits in evidence, lay along the east side of the rectangular property with its point at the southeasterly corner, and its easterly line extending diagonally so that there is 160 feet of frontage on the Columbia River at its northerly end. All of the property is intersected near the shore of the river by a dike upon which is Marine Drive.

The rectangular property was acquired by Mrs. Douglas and her then husband in 1920 from one Cooper. At that time the land lying immediately to the east belonged to the original record holder, Powell. The testimony of Mrs. Douglas and her son, who lived

on the property for many years, was to the effect that an old fence line defined the triangular piece to the east of their property and that they had occupied and used that property. The testimony, even their own, conflicted as to how extensive their use of the triangular property had been. Mrs. Douglas testified, with references to her understanding from her grantor, Mr. Cooper:

> "A   Yes. He mentioned at the time there was an extra strip of ground in here and to control the property the same as he done.
>
> "Q   Was that the triangular piece?
> "A   That is the triangular piece."

Later in her direct examination, still speaking with reference to the triangular piece, she testified:

> "Q   When you acquired that property Mr. Cooper didn't give you a deed to it, did he?
> "A   No, he told me that he had this here piece of property and he had kept that into fence for all those years. Mr. Powell told me the same thing, but he says Mr. Cooper has been using that piece of property, you continue to use it.
>
> "Q   All right. When you continued to use it, did you continue using it under a claim of ownership?
> "A   Absolutely."

As already noted, Mr. Powell at that time was the record owner of all of the property lying to the east of the rectangular piece.

Mr. Maxwell testified that he went into possession of the property in 1959 under a lease-option agreement, which is not in evidence, and that he had used the triangular property continuously from that time forward. Other evidence, including aerial photos and a neighbor's testimony, sharply conflicted with his tes-

timony about continuous use. In 1960 Mr. Maxwell obtained permission from the U. S. Army Engineers to put piling, dolphins and a moorage into the Columbia River opposite the rectangular property. In 1965 he applied to extend these improvements 160 feet easterly. On September 24, 1965, he wrote to the U. S. Army Engineers, stating:

"I have also secured a deed to the property adjoining my land on the East as shown by the sketch."

This letter was dated some seven months after the 1965 deed to the triangular property.

Maxwells' claim of adverse possession is, first, that the property belonged to Mrs. Douglas by reason of her adverse possession over many years subsequent to 1920. Second, that Maxwells acquired the property by adverse possession between 1959 and the time this action was commenced—October 19, 1970. And third, that, in any event, they can tack the adverse possession of Mrs. Douglas and her husband to their own in order to make up the 10 years required by ORS 12.050.

■ If the property is to be acquired by adverse possession the evidence thereof must be "clear and positive" with reference to all of the necessary elements. *Winthers v. Bertrand,* 239 Or 97, 396 P2d 570 (1964) ; *Du Val et ux v. Miller,* 208 Or 176, 300 P2d 416 (1956). The possession must be open, adverse, notorious and exclusive. *Du Val et ux v. Miller,* supra. Proof of the hostile possessive intent inherent in these elements is not required where the taking is under a color of title, and it was held in *Rider v. Pottratz,* 246 Or 454, 425 P2d 766 (1967), that an intent to claim land actually occupied under a mistaken belief of ownership is sufficient. If the use of the land is by permis-

sion of the record owner, it is not adverse. *Scott v. Elliott,* 253 Or 168, 451 P2d 474 (1969).

■ This is a declaratory proceeding under ORS 28.010 et seq. It may be equitable or legal in character, depending upon the nature of the proceeding. *Williams v. Stockman's Life Ins.,* 250 Or 160, 441 P2d 608 (1968); *State Highway Com. v. DeLong Corp.,* 9 Or App 550, 495 P2d 1215 (1972); *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971). If the proceeding is viewed as equitable in nature, we review the record *de novo,* but if it is viewed as being a law action in character, we treat the judgment of the court below as though it were a jury verdict and affirm if there is any evidence to support it. Difficulty arises by reason of the fact that adverse possession may be raised in a number of different proceedings. For instance, in *Du Val et ux v. Miller,* 208 Or 176, supra, where an action of ejectment was brought and the defense was adverse possession, the court said that the trial court's finding must be accorded the force and effect of a verdict by a jury. In *Fry et al v. Woodward et ux,* 221 Or 39, 350 P2d 183 (1960), where a suit to quiet title was brought to settle an adverse possession claim, the proceeding was viewed as being in equity. In *Lemon v. Madden,* 216 Or 539, 340 P2d 977 (1959), the parties stipulated in the trial court that the answer claiming adverse possession sounded in equity and therefore the court heard it on appeal as though it were in equity.

■ If we were to hold that this proceeding is legal in character our decision would be easy, because there is evidence to support the trial court decision. However, it does appear that we should view the matter as equitable in character and review the record *de novo.*

Even so, as we review the evidence we find insufficient basis, even though the case is more difficult, for disagreeing with the trial judge's decision.

Mrs. Douglas indicated in her testimony, even though she claimed the land, that her use of it was with the permission of Mr. Powell, who was then the record owner of it. We find no satisfactory evidence that the permissive character of this use was changed. When she contracted the land to the Maxwells the instrument did not describe the triangular strip, but only the rectangular property. The lease-option agreement under which the Maxwells first went on the land was not produced. The evidence is utterly confused by the 1965 and 1968 deeds; and further confounded by the applications of Mr. Maxwell made to the Army Engineers for development of the waterfront. When we view the facts in light of the rule that proof of adverse possession must be clear and positive, we find that *any* claim stemming from the Douglas use of the land falls short.

Unquestionably, Maxwells used the subject property adversely from some time in 1965 or even in 1964 until this proceeding was commenced. However, the evidence about adverse use the Maxwells made of the property from 1959 to around 1965 is not clear and positive. When Mr. Maxwell started to develop his river frontage he applied for permission to develop and did develop only what was described in the purchase contract. His only positive proof was that in 1965 or shortly before, he actively started adverse use of the triangular property. Thus, he failed to prove the ten years' adverse use thereof required by ORS 12.050.

Affirmed.